UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Ray H.,[1] <br><br> Plaintiff, <br><br> v. <br><br> Kilolo Kijakazi, <br> *Acting Commissioner of Social Security*, <br><br> Defendant. | Case No. 22-cv-2666 (MJD/DJF) <br><br><br> **REPORT AND RECOMMENDATION** |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Ray H. ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Decision"). This matter is before the Court on the parties' cross-motions for summary judgment. The undersigned considers the motions pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1. Because substantial evidence supports the Decision, the Court recommends Plaintiff's motion for summary judgment (ECF No. 14) be denied, Defendant's motion for summary judgment (ECF No. 17) be granted, and this matter be dismissed with prejudice.

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in orders in Social Security matters.

# BACKGROUND

## I.     Plaintiff's Claim

Plaintiff protectively applied for DIB on April 7, 2020. (Soc. Sec. Admin. R. (hereinafter "R.") 287.)[2]  At that time he was a 50-year-old man with an eleventh-grade education and specialized training as a truck driver, who had previously worked as a forklift operator and truck driver. (R. 287, 313-314.)  Plaintiff initially alleged he became disabled on October 19, 2018 (R. 287) resulting from leukemia, (R. 313), but later amended his alleged onset date to February 11, 2020 (R. 34, 137).  The date of Plaintiff's last insurance ("DLI") was June 6, 2023. (R. 164.)

## II.    Regulatory Background

An individual is considered disabled for purposes of Social Security disability benefits if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  In addition, an individual is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B). "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(D).

The Commissioner has established a sequential, five-step evaluation process to determine

---

[2] The Social Security administrative record (R.) is filed at ECF No. 12.  For convenience and ease of use, the Court cites to the record's pagination rather than the Court's ECF and page numbers.

whether an individual is disabled. 20 C.F.R. § 416.920(a)(4). At step one, the claimant must establish that he is not engaged in any "substantial gainful activity." *Id.* § 416.920(a)(4)(i). The claimant must then establish that he has a severe, medically determinable impairment or combination of impairments at step two. *Id.* § 416.920(a)(4)(ii). At step three, the Commissioner must find the claimant is disabled if the claimant has satisfied the first two steps and the claimant's impairment meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1 ("Listing of Impairments" or "Listing"). *Id.* § 416.920(a)(4)(iii).[3] If the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four. The claimant then bears the burden of establishing his residual functional capacity ("RFC") and proving he cannot perform any past relevant work. *Id.* § 416.920(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). If the claimant proves he is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant can perform such work, the Commissioner will find the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

### III. Relevant Mental Health Findings

Plaintiff argues that at step two, the ALJ improperly rejected the medical expert opinions of psychiatrist Alford Karayusuf, M.D., and state agency expert Kathleen Feil, Ph.D., L.P., which concluded his depression was a severe mental health impairment. (*See generally* ECF No. 15.) Plaintiff participated in a single telehealth consultative examination with Dr. Karayusuf on

---

[3] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" affected. *See* 20 C.F.R Part 404, Subpart P, App. 1.

3

September 16, 2020.  (R. 981-83.)  After reviewing Plaintiff's medical records and interviewing him, Dr. Karayusuf diagnosed Plaintiff with "major depression, recurrent, moderate," "generalized anxiety disorder, moderate," and "alcohol dependence in a tenuous remission."  (R. 982.)  At the time of the examination, Plaintiff reported he was undergoing chemotherapy for leukemia that had been diagnosed about ten months earlier, that he occasionally broke down in tears "for no reason," and that he had been depressed for about four months.  (R. 981.)  He further reported he had never been psychiatrically hospitalized and did not have suicidal thoughts.  (R. 981.)

At the initial administrative level, the state agency experts determined Plaintiff suffered from only two severe impairments—leukemia and COPD—and no non-severe impairments.  (R. 158.)  At the reconsideration level, however, Dr. Feil found Plaintiff suffered from depressive, bipolar, and related disorders, which she determined were "severe".  (R. 173.)  She found Dr. Karayusuf's medical opinion "persuasive" and relied on his opinion to support her findings.

**IV.    Procedural History**

The Commissioner denied Plaintiff's application for DIB initially (R. 186-190) and on reconsideration (R. 211-216).  On May 19, 2021, at Plaintiff's request (R. 215-216, 247), an Administrative Law Judge ("ALJ") held a hearing on Plaintiff's application.  Plaintiff and a vocational expert ("VE") testified at the hearing.  (R. 133- 152.)  Plaintiff was represented by a non-attorney representative (R. 135).  After the hearing, the ALJ determined Plaintiff had: (1) non-severe major depressive disorder, generalized anxiety, and alcohol dependence—none of which limited his ability to perform basic mental work activities (R. 35-36); and (2) multiple physical impairments, which at least in combination were severe:  chronic obstructive pulmonary disease; coronary artery disease; left greater than right hearing loss; syncopal episodes of unclear etiology; leukemia; gout; and obesity (R. 35).  The ALJ found, however, that Plaintiff's impairments did not

4

meet or medically equal any impairment in the Listing. (R. 36- 39.) After thoroughly cataloging the mental and physical health evidence in the record, he then determined that:

> [Plaintiff] has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except the individual may never climb ropes, ladders, or scaffolds, may occasionally balance, and may frequently climb ramps and stairs, stoop, kneel, crouch, and crawl. The individual may occasionally hear with the left ear, as the term hearing is defined and tracked in the Dictionary of Occupational Titles (DOT) and the Selected Characteristics of Occupations (SCO). The individual may not work in an environment where the noise level is greater than "moderate" as that term is defined in the DOT and the SCO. The individual may have no exposure to extreme cold, concentrated levels of airway irritants, unprotected heights, or hazards, as the term hazards is defined in the DOT and the SCO. The individual may not drive a vehicle as part of job duties.

(R. 39.) Next, the ALJ classified Plaintiff's past relevant work as a "Truck Driver" (representative Dictionary of Occupational Titles ("DOT") #904.383-010); and a "Forklift Driver" (representative DOT #921.683-050). (R. 43.) The ALJ determined that since the physical demands of these jobs exceed Plaintiff's RFC, he is unable to perform past relevant work. (R. 43.) The ALJ then evaluated whether Plaintiff is capable of performing other jobs that exist in significant numbers in the national economy. (R. 43-44.) Based on the testimony of the VE, and considering Plaintiff's age, education, work experience and RFC, the ALJ determined Plaintiff is capable of performing such other jobs. The ALJ concluded on that basis that Plaintiff is not disabled. (R. 45.)

## DISCUSSION

### I.     Standard of Review

The Court's review of the Commissioner's Decision is limited to determining whether the Decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Substantial evidence … is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison*

*Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This "threshold … is not high." *Id*. "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

Remand is warranted, however, when the ALJ's opinion contains insufficient factual findings that, "considered in light of the record as a whole, are insufficient to permit [the] Court to conclude that substantial evidence supports the Commissioner's decision." *Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings were insufficient for meaningful appellate review). At minimum, the ALJ must build a logical bridge between the evidence and the RFC he creates. He does so by "includ[ing] a narrative discussion describing how the evidence supports each conclusion," and "[t]he [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *See* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7; *Lee R. v. Kijakazi*, No. CV 20-1989, 2022 WL 673259, at *4 (D. Minn. Mar. 7, 2022) (finding ALJ failed to create a "logical bridge" between the evidence and his conclusions); *Weber v. Colvin*, No. 16-cv-332 (JNE/TNL), 2017 WL 477099, at *26 (D. Minn. Jan. 26, 2019) (same).

**II.     Analysis**

Plaintiff asks the Court to reverse the Decision and order immediate payment of DIB, or in the alternative, to remand this matter on the ground that the ALJ erred at step two when he failed to find Plaintiff's depression is a severe mental health impairment based on the medical opinion of Dr. Karayusuf and the prior administrative findings of Dr. Feil. (ECF Nos. 15 at 5-11; 19 at 2-5.) Plaintiff concedes he did not identify any mental health condition as a basis for disability in

6

his application for benefits, but argues this omission is of no consequence since the ALJ found Plaintiff had several severe physical impairments that he similarly did not identify in his application. (ECF No. 19 at 2-3.) Plaintiff argues the ALJ's failure to properly weigh the severity of his depression bears on the ALJ's RFC analysis and ultimate determination that Plaintiff is not disabled. (ECF No. 15 at 5-11; ECF No. 19 at 5.)

### A. The Severity of Plaintiff's Depression

At step two of the sequential analysis, an ALJ must determine whether the claimant has a "severe" impairment that lasted, or is expected to last, for at least twelve months. 20 C.F.R. § 404.1520(c) ("Durational Requirement"). An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). To evaluate the severity of a claimant's mental impairment, an ALJ must consider four functional areas to determine how the mental impairment limits functioning in a work setting: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00.A.2.b. Pursuant to the regulation, the ALJ must rate these areas based on a five-point scale of none, mild, moderate, marked, and extreme. *See id.* § 12.00.F.2. A finding of "none" or "no limitation" indicates a claimant is able to function independently, appropriately, effectively, and on a sustained basis. *Id.* An impairment or combination of impairments that does not significantly limit a claimant's physical or mental ability to perform basic work activities is considered "not severe." 20 C.F.R. § 404.1522.

The ALJ determined Plaintiff's mental health impairments, including his depression, were not severe because they did not limit his ability to perform basic work activities in any of the four functional areas. (R. 35.) The ALJ first observed that Plaintiff did not assert any mental health

impairments on his application for benefits. (R. 35.) This was not the only fact on which the ALJ relied to support his findings, however. He also observed that Plaintiff's medical record was devoid of mental health concerns, other than a single telehealth examination with Dr. Karayusuf in September 2020 during which Plaintiff reported: (1) being forgetful and feeling depressed with crying spells for four months during active chemotherapy; (2) no history of psychiatric hospitalization; (3) no current use of medication; (4) previous suicidality when he was unemployed; (5) heavy drinking that started about a year earlier and continued for seven months; (6) residing with his wife and a good relationship with his three adult children; (7) daily personal cares and relying on his wife for more household chores due to physical limitations; and (8) spending time watching television, reading, and socializing by telephone with siblings. (R. 35, citing R. 981-984.) The ALJ also noted that aside from some mild psychomotor retardation, mild to moderate tension, and moderately depressed and slightly anxious mood, Dr. Karayusuf's mental status examination of Plaintiff was unremarkable. (R. 35, citing R. 982.)

Based on his September 2020 consultation with Plaintiff, Dr. Karayusuf diagnosed Plaintiff with moderate, recurrent major depression, moderate generalized anxiety disorder, and alcohol dependence in tenuous remission. (R. 982.) Dr. Karayusuf assessed Plaintiff's limitations as:

> able to understand, retain and follow simple instructions. He is restricted to work that involves brief, superficial, infrequent interactions with fellow workers, supervisors and the public. Within these parameters and in the context of performing simple, routine, repetitive, concrete, tangible tasks, he is able to maintain pace and persistence.

(R. 982-983.) The ALJ stated that because Dr. Karayusuf was an acceptable medical source and "giving [Plaintiff] the benefit of the doubt," he agreed with Dr. Karayusuf's mental health diagnoses but otherwise found no persuasive value in his assessment and associated opinion. (R. 36.) The ALJ noted: (1) Dr. Karayusuf's opinion was largely subjective; (2) Plaintiff did not

assert mental health impairments on his application; and (3) during his single visit with Dr. Karayusuf, Plaintiff reported only four months of symptoms while he was on active chemotherapy. (R. 36, citing R. 153-163, 166-182.) The ALJ also determined there was no support for any limitations under 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00.A.2.b, because: (1) Plaintiff reported an improvement to independent personal care and engaging in ironing tasks at home; (2) Plaintiff had a history of skilled work and Dr. Karayusuf made no specific findings to support Plaintiff's reported forgetfulness; (3) even though Plaintiff did not engage in a wide range of household chores due to physical limitations, Plaintiff had no specific findings to support limitations in concentration, persistence, or pace; (4) Plaintiff appeared to have a good relationship with his children and siblings; and (5) because Dr. Karayusuf consulted with Plaintiff during the COVID-19 pandemic, it was unclear how much Plaintiff's time outside the home or time spent with others was affected by social distancing guidelines. (R. 36, citing R. 355-356; *see also* 982 (Dr. Karayusuf's report detailing positive familial relationships).)

The ALJ also explained that because he found no persuasive value in Dr. Karayusuf's assessment and associated opinion, he similarly found no persuasive value in Dr. Feil's findings based on that opinion. (R. 36, citing R. 172-174; 178-180.) The ALJ noted that the state agency psychologist on initial review did not have access to Dr. Karayusuf's opinion. (R. 36; *see also* R. 154-158 (initial level administrative findings).) The state agency psychologist at that level thus concluded Plaintiff did not have any mental health impairments at all—severe or non-severe. (R. 36, 157.) At the reconsideration level, Plaintiff submitted Dr. Karayusuf's assessment and opinion and Dr. Feil took it into consideration. (R. 172-174.) She found Plaintiff's depression was "severe," and that it: (1) moderately limited Plaintiff's ability to understand, remember, or apply information; interact with others; and concentrate, persist, or maintain pace; and (2) mildly

9

limited Plaintiff's ability to adapt or manage himself. (R. 173-174; 178-180.) Dr. Feil stated that her mental residual capacity assessment was "predicated upon the medical source statement provided by Alford Karayusuf," and "the medical evidence in [sic] file is consistent with the level of severity described in the medical source statement." (R. 180.)

The ALJ rejected Dr. Feil's opinion for the same reasons he found Dr. Karayusuf's opinion unpersuasive: (1) other than Dr. Karayusuf's findings, Plaintiff's medical records were free of mental health concerns, treatment, or positive mental status examinations; (2) Plaintiff reported only four months of depressive symptoms, which did not support the twelve-month Durational Requirement; and (3) Dr. Karayusuf's mental status examination did not include specific cognitive findings supporting the degree of limitation found in her opinion. (R. 36; *see* R. 981-984.)

Based on this record, the Court finds the ALJ clearly articulated his rationale for rejecting Dr. Karayusuf's opinion and Dr. Feil's administrative findings: that based on his review of the totality of the record, the opinions were inconsistent with the degree of limitation advised. The Court likewise finds the ALJ supported with substantial evidence his findings that Plaintiff's mental health impairments were not severe and did not impose any limitation in the areas under 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00.A.2.b. (*See* R. 36, citing, *e.g.*, Plaintiff's limited mental health treatment history; Plaintiff's failure to include any mental health impairment on his application; lack of support for any functional limitation; Plaintiff's positive familial relationships; and Plaintiff's improved ability to perform self-care.) That the ALJ cited Plaintiff's failure to include any mental health impairment on his disability application as support for finding those impairments not severe—even when the ALJ determined other physical impairments Plaintiff did not list *were* severe—does not undermine his analysis. Plaintiff's failure to assert his mental health

impairments was just one of several reasons the ALJ cited to support his determination that those impairments were not severe.

To the extent Plaintiff argues the ALJ improperly evaluated certain evidence in assessing the severity of his impairments—including the ALJ's findings related to impairments Plaintiff did not list on his application—it is not the Court's role to reweigh the evidence. *Schmitt v. Kijakazi*, 27 F.4d 1353, 1361 (8th Cir. 2022) ("Despite [Plaintiff's] dissatisfaction with how the ALJ weighed the evidence, it is not this Court's role to reweigh that evidence"). The Eighth Circuit has clearly explained that the issue "is not whether substantial evidence exists to reverse the ALJ," but "whether substantial evidence supports the ALJ's decision." *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the Court must affirm the decision. *Perks*, 687 F.3d at 1091; *see also Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018) ("If substantial evidence supports the Commissioner's conclusions, [the] Court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome.") (quoting *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)). Here, the ALJ clearly supported his determination regarding the severity of Plaintiff's mental health impairments with substantial evidence, so the Court must affirm his findings.

B.   **Plaintiff's RFC**

Plaintiff argues the ALJ's failure to properly weigh the severity of his depression affected the ALJ's RFC analysis and ultimate determination that Plaintiff is not disabled. (ECF No. 15 at 5-11; ECF No. 19 at 5.) Having found that the ALJ properly supported his determination

regarding the severity of Plaintiff's mental health impairments, the Court also finds Plaintiff's contention related to his RFC is without merit.

It is the claimant's burden to prove his RFC. *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003) (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)); *accord Charles v. Barnhart*, 375 F.3d 777, 782 n.5 (8th Cir. 2004). The ALJ bears primary responsibility for assessing a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and a claimant's own descriptions of the claimant's limitations. *See* 20 C.F.R. § 404.1545(a)(3); *see also*, *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016); *Roberts v. Apfel*, 222 F.3d, 466, 469 (8th Cir. 2000). "Because a claimant's RFC is a medical question, an ALJ's assessment must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley*, 829 F.3d at 932 (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)). But an RFC is still ultimately an "administrative assessment" and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). The "ALJ is not limited to considering medical evidence," *Baldwin*, 349 F.3d at 556, but must determine the claimant's RFC based on all relevant medical and non-medical evidence, *Boyd*, 831 F.3d at 1020; 20 C.F.R. § 404.1545(a)(3). An ALJ's RFC determination is acceptable if it is supported by at least some medical evidence based on the ALJ's independent review of the record. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002).

The ALJ stated that he considered "all symptoms and the extent to which these symptoms [could] reasonably be expected as consistent with the objective medical evidence and other evidence," as well as "the medical opinion(s) and prior administrative finding[s]." Having determined at step two of the sequential analysis that Plaintiff's non-severe mental impairments

did not impose any limitations on Plaintiff's ability to function, the ALJ did not include any mental limitations in Plaintiff's RFC. (R. 39-43.)

While Plaintiff's RFC does not mirror any medical opinion or prior administrative finding, an ALJ may properly decline to follow any opinion that is unsupported by the record. *See* 20 C.F.R. §§ 404.1513(a)(2), 404.1520c; *Despain v. Berryhill*, 926 F.3d 1024, 1028 (8th Cir. 2019). As discussed above, the ALJ properly explained why he found Dr. Karayusuf' medical opinion and Dr. Feil's prior administrative findings unsupported by the record. Moreover, because an RFC is ultimately an administrative assessment, the ALJ appropriately considered the record as a whole and found insufficient evidence to support limitations beyond those he included in Plaintiff's RFC. *Boyd*, 831 F.3d at 1020. Upon reviewing the ALJ's detailed RFC analysis, the Court concludes the ALJ's determination regarding Plaintiff's RFC is supported by substantial evidence. Because the ALJ properly considered the record as a whole and substantial evidence supports the ALJ's findings related to Plaintiff's RFC, the Court must affirm it. *Perks*, 687 F.3d at 1091.

## REPORT AND RECOMMENDATION

For the above reasons, and based on all the files, records, and proceedings herein, **IT IS RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment (ECF No. [14]) be **DENIED**;

2. Defendant's Motion for Summary Judgment (ECF No. [17]) be **GRANTED;**

3. The Decision be **AFFIRMED**; and

4. Plaintiff's Complaint (ECF No. [1]) be **DISMISSED WITH PREJUDICE**.

Dated: November 6, 2023                                             *s/ Dulce J. Foster*
                                                                    DULCE J. FOSTER
                                                                    United States Magistrate Judge

13

**NOTICE**

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).